UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| HOWARD MACK HARRIS<br>BOP #07837-033 | CIVIL ACTION NO. 10-328 |
| | SECTION P |
| VERSUS | |
| | JUDGE MINALDI |
| CALCASIEU PARISH<br>DETENTION CENTER, ET AL | MAGISTRATE JUDGE KAY |

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff Howard Harris, proceeding *in forma pauperis*, filed the instant civil rights complaint on February 26, 2010, pursuant to 42 U.S.C. § 1983. Doc. 1. At the time of filing, plaintiff was incarcerated at Calcasieu Sheriff's Prison (CSP) in Lake Charles, Louisiana, and complained of events that occurred at that facility. Plaintiff has subsequently been transferred and is now housed at USP Pollock (USP-P), Pollock, Louisiana.

Plaintiff sues approximately thirty-six (36) defendants. As relief, plaintiff seeks $25,600,000.00 in monetary damages for violations of his constitutional rights and for his emotional distress. Plaintiff also asks that certain sheriff's deputies, wardens, assistant wardens, and medical staff be terminated from employment due to their malicious intent and misconduct.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

**Background**

Plaintiff contends that he has been subjected to cruel and unusual punishment due to

various conditions of confinement at CSP. Doc. 3, p. 3-4. More specifically, he complains that CSP has inadequate legal materials that are not updated. Doc. 3, p. 3. He further complains that there is no law library at CSP. *Id.* In addition, plaintiff states that he has received threats of being tased for filing lawsuits. *Id.* He also contends that the prison's water is polluted and that inmates are being denied radios, magazines, and newspapers. Finally, he claims that prison officials are stealing from his prison account. *Id.*

## Law and Analysis

### 1. *Frivolity Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. § 1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993); *see also Denton v. Hernandez*, 112 S.Ct. 1728, 1733 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle,* 788 F.2d 1116, 1120 (5th Cir. 1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias,* 23 F. 2d at 97.

Accepting all of plaintiff's allegations as true, the undersigned concludes, for the following reasons, that the complaint should be denied and dismissed with prejudice as frivolous and for failing to state a claim for which relief may be granted.

## 2. *Improper Parties*

The court notes that the vast majority of named defendants are not even mentioned in plaintiff's complaint. Further, several parties do not have the capacity to be sued in this action.

Calcasieu Parish Detention Center (CPDD)[1] and the prison medical department are not proper parties to this suit. Federal Rule of Civil Procedure 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether CPDD and the prison medical department has the capacity to be sued in this action.

Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law

---

[1] Petitioner incorrectly refers to the Calcasieu Sheriff's Prison (CSP) as the Calcasieu Parish Detention

attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24.  In Louisiana, correctional centers are not legal entities capable of suing or being sued.  *Ruggiero v. Litchfield*, 700 F.Supp. 863, 865 (M.D. La. 1988).  In other words, the State of Louisiana has not granted juridical status to CPDD or to the prison medical department.  Plaintiff's suit against these non-juridical entities fails to state a claim upon which relief can be granted.

Further, plaintiff has filed his complaint pursuant to 42 U.S.C. § 1983.  However, since § 1983 is inapplicable to federal employees and agents, and since the Bureau of Prisons is a federal agency, the court construes any claim against this defendant as arising under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which authorizes civil rights suits against federal employees or agents.  "The principle of sovereign immunity protects the federal government from suit except insofar as that immunity is waived."  *Pena v. United States*, 157 F.3d 984, 986 (5th Cir. 1998).  Plaintiff's suit seeking monetary damages for alleged constitutional violations against the Bureau of Prisons is barred by the doctrine of sovereign immunity.  *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 71-72 (2001); *FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (finding that there is no direct cause of action for damages against a federal agency because of sovereign immunity).

Thus, plaintiff's claims against the above referenced parties fail to state a claim upon which relief can be granted and seek monetary relief from a defendant who is immune from such relief.  As such, these claims should be dismissed.

3.  ***Stolen Property***

Plaintiff claims that officers have stolen money from his financial account.  Doc. 3, p. 3.

---

Center (CPDD).

As to these allegations, the Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S.Const. amend. XIV.  However, jurisprudence makes it abundantly clear that a prisoner's claim for random deprivation of personal property is not cognizable under § 1983.

In *Parratt v. Taylor*, 451 U.S. 527, 544 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law.  The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Supreme Court ruled that the State's post-deprivation tort remedy provided all the process that was due.  *Id.* at 536-37.

The Due Process Clause does not embrace tort law concepts.  *Id.*  Although a prisoner may be afforded a remedy under state tort law for deprivation of property, the Fourteenth Amendment does not afford the prisoner a remedy.  *Daniels v. Williams,* 474 U.S. 327, 335 (1986).  Even in instances where intentional deprivation occurs, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated.  *Hudson v. Palmer*, 468 U.S. 517 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995).  This principle known as the *Parratt/Hudson* doctrine rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible.  *Davis*, 70 F.3d at 375 (citing *Zinermon v. Burch*, 494 U.S. 113, 128-32 (1990)) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State).

In this case, plaintiff's allegations, accepted as true for purposes of this evaluation, would constitute a random and unauthorized deprivation of personal property.  If adequate state law remedies are available, no further due process is required under the Constitution.  Article 2315 of

the *Louisiana Civil Code* provides plaintiff the opportunity to seek redress for either the negligence of prison officials or an intentional tort (conversion) committed by employees of CSP. Article 2315 is the general tort provision of the Civil Code and provides all the process that is required; accordingly the Fourteenth Amendment is not implicated. *Charbonnet v. Lee*, 951 F.2d 638 (5th Cir. 1992), *cert. denied*, 505 U.S. 1205 (1992).

A liberal construction of plaintiff's allegations fails to support a Fourteenth Amendment violation.

### 4. *Inadequate Legal Material*

Plaintiff also claims that the legal material at CSP is inadequate. Doc. 3, p. 3.

For this claim to be viable plaintiff must establish that he is being denied meaningful access to the courts. Prisoners are guaranteed the right of access to the courts by the United States Constitution; however, in this action, plaintiff's claims do not rise to the level of a constitutional violation.

In *Bounds v. Smith*, 430 U.S. 817, 822 (1977), the Supreme Court held that prisoners have a fundamental constitutional right to "adequate, effective, and meaningful" access to the courts. *See also Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997), cert. denied, 522 U.S. 995 (1997). A prisoner's right of access is not unlimited, "[i]t encompasses only 'a reasonably adequate opportunity to file non frivolous legal claims challenging their convictions or conditions of confinement.' " *Id*. at 310-311 (quoting *Lewis v. Casey*, 518 U.S. 343 (1996)). In *Lewis v. Casey*, the Supreme Court found that the right of access to the courts does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. *Id.* at 356. The tools it

requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.  *Id*.

Further, prison officials have considerable discretion in choosing the mechanism and forms of assistance they will furnish to prisoners for the purpose of allowing prisoners to file non-frivolous legal claims.   *See Lewis*, 518 U.S. at 356 ("Of course, we leave it to prison officials to determine how best to ensure that inmates... have a reasonably adequate opportunity to file non-frivolous legal claims challenging their convictions or conditions of confinement"). "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court."  *Brewer v. Wilkinson*, 3 F.3d at 821; *see also Lewis*, 518 U.S. at 349-355; *Norton v. Dimazana*, 122 F.3d 286, 290 (5th Cir. 1997); *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).  The Supreme Court in *Lewis*, explained that before an inmate may prevail on a claim that his constitutional right of access to the courts was violated, he must demonstrate that the suffered "actual injury"--i.e. that the denial of access "hindered his efforts to pursue a legal claim." *Lewis,* 518 U.S. at 351; *see also Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998) (without proving actual injury, the prisoner/plaintiff cannot prevail on an access-to-courts claim); *Chandler v. Baird*, 926 F.2d 1057, 1063 (5th Cir.1991) (A civil rights claim cannot be based on "minor and short-lived impediments to access" in the absence of actual prejudice); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir. 1992), cert. denied, 504 U.S. 988 (1992) (If a litigant's position is not prejudiced by the claimed

violation, his claim of denial of access to the courts is not valid).

Plaintiff has not demonstrated that he has been hindered in his ability to pursue a legal claim. In fact, his filing history would indicate quite the contrary. Accordingly, absent any cognizable injury or prejudice, plaintiff cannot raise a claim of denial of access to the courts and his claims are recommended dismissed for failing to state a claim upon which relief can be granted.

   *5. Retaliation*

Plaintiff claims that officers threaten inmates with the use of tasers in order to prevent the inmates from filing suits. Doc. 3, p. 3. To the extent that plaintiff claims that the threats are acts of retaliation, those claims should be dismissed.

It is well established that prison officials may not retaliate against an inmate because that inmate exercised a right guaranteed to him under the constitution. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). However, as the Fifth Circuit has repeatedly emphasized, claims of retaliation from prison inmates must be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in penal institutions. *Id.* at 1166.

To state a claim of retaliation, a prisoner must allege facts which establish that (1) he exercised a specific constitutional right, (2) the defendant had the intent to retaliate against him for his exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation. Causation requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (quoting *Woods*, 60 F.3d at 1166), *cert. denied*, 522 U.S. 995 (1997). "The inmate must allege more than his

personal belief that he is the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). "The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (quoting *Woods,* 60 F.3d at 1166).

Plaintiff here fails to offer anything more than a conclusory statement in support of this claim. As previously stated, conclusory allegations of retaliatory motive or intent are not sufficient to evidence a pattern of retaliation or motive for same. Plaintiff's allegations of retaliation are insufficient to state a claim under this cause of action.

### 6. *Contaminated Water/Medical Care*

Plaintiff claims that the water at CSP is contaminated due to problems at the Lake Charles Water Reservoir Company. Doc. 3, p. 3. More specifically, plaintiff states that the problem was caused by a bat and a cow falling into the Lake Charles water supply. Doc. 7, p. 5. As a result, plaintiff claims that he suffered from stomach viruses for which the nurses at CSP would not provide treatment. *Id.*

The water condition described by the plaintiff, while plainly unpleasant, does not rise to the level of a constitutional violation. He has come forward with nothing to show that the condition of which he complains was done for the purpose of punishing inmates nor has he shown that such conditions resulted from any official policy or custom. Plaintiff has not alleged any substantial injury as a result of his allegations. Plaintiff cannot prevail on this claim or on his conclusory claim that he was denied medical care for the stomach viruses that alleges resulted from water contamination.

This claim is analyzed under the Eighth Amendment's prohibition of cruel and unusual

punishment. In order to prevail on such claims, convicts must establish that the refusal or delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97 (1976).

Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-59 (5th Cir. 2001). "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). The fact that a plaintiff disagrees with what medical care is appropriate or with the course of treatment offered by the medical staff does not state a claim of deliberate indifference to serious medical needs. *See Norton,* 122 F.3d at 292; *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992); *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1992) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals

stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. *See Mayweather, supra; Woodall, supra.*

Merely alleging a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado*, 920 F.2d at 321; *see also Spears, supra* (A disagreement with a doctor over the method and result of medical treatment does not require a finding of deliberate indifference). Furthermore, the fact that plaintiff continues to suffer from pain is insufficient to establish that a constitutional violation has occurred. *Mayweather, supra*.

In the instant case, plaintiff's allegations, at most, state a disagreement between himself and the medical staff regarding the procedures to treat his medical problems. As previously stated, claims such as those made by plaintiff are insufficient to establish that a constitutional violation has occurred. Absent a constitutional violation, federal courts are generally reluctant to interfere in the internal affairs of a prison. *See Shaw v. Murphy*, 121 S.Ct. 1475 (2001); *Procunier v. Martinez*, 94 S.Ct. 1800 (1974). The decision regarding plaintiff's treatment is best left to the prison officials.

The facts of this matter clearly do not demonstrate that the defendants "refused to treat him, ignored his complaints, intentionally treated [plaintiff] incorrectly or evince a wanton disregard. . ." for plaintiff's medical needs. The evidence before the court simply does not support a finding of deliberate indifference. Accordingly, this court finds that plaintiff's medical

care claims should be dismissed for failing to state a claim upon which relief can be granted.

### 7. *Access to Reading Materials/Radio*

Plaintiff claims that his First Amendment rights to listen to the radio and receive newspapers and other non-legal, non-religious reading materials have been violated. Doc. 3, p. 3.

In *Beard v. Banks*, 548 U.S. 521 (2006), the United States Supreme Court considered an inmate's First Amendment challenge to a prison regulation that severely limited his access to newspapers, magazines and photographs while he was in the most restrictive level of disciplinary lockdown. The Court reiterated its holdings and the standards previously expressed in *Turner v. Safley*, 482 U.S. 78 (1987) and *Overton v. Bazzetta*, 539 U.S. 126 (2003), by again recognizing that imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment - but at the same time the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere.

As *Overton* (summarizing pre- *Turner* case law) pointed out, courts owe substantial deference to the professional judgment of prison administrators. *Beard*, 548 U.S. 521, 528. The court in *Turner* went on to reconcile these principles by holding that restrictive prison regulations are permissible if they are reasonably related to legitimate penological interests, and are not an exaggerated response to such objectives. The Court in *Beard* applied the same standard it had previously established in *Turner* by stating that four factors must be evaluated to determine the constitutionality of a prison practice or regulation that deprives or restricts a prisoner's First Amendment right of access to newspapers and other non-religious, non-legal materials: (1) whether there is a valid, rational connection between the prison regulation and the legitimate

governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) what impact will accommodation of the asserted constitutional right . . . have on guards and other inmates, and on the allocation of prison resources generally; and (4) are ready alternatives for furthering the governmental interest available. *Id*. at 529 (quotations omitted).

In a more recent decision addressing the First Amendment rights of prisoners, the Fifth Circuit noted that in *Beard*, the Supreme Court, unsurprisingly, acknowledged the particular importance of the first factor, explaining that in some cases the second, third, and fourth factors can "add little, one way or another, to the first factor's basic logical rationale." In the light of the first factor, "the real task" is to determine whether there is a "reasonable relation" that is, "more than simply a logical relation" between the prison regulation and the legitimate penological interest." *Morgan v. Quarterman*, 570 F.3d 663, 666 (5th Cir.2009) (quoting *Beard*, 548 U.S. at 532, 533).

Thus, prison restrictions on an inmate's access to television, radio, newspapers and other non-legal, non-religious materials do not violate his First Amendment rights if the restrictions are reasonably related to legitimate penological interests. *Beard*, 548 U.S. at 530; *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989); *Turner*, 482 U.S. at 89; *Morgan*, 570 F.3d at 666. In the instant case, plaintiff does not state that there is an absolute prohibition on receiving such material or that any limitation that was placed on him in regard to receiving such material was not reasonably related to legitimate penological goals.

### 8. *Injunctive Relief*

As previously stated, plaintiff has been transferred from CSP. Therefore, his requests for

injunctive relief are moot.

The law is clear that the transfer of a prisoner out of an allegedly offending institution generally renders his claims for injunctive relief moot. *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (*per curiam*) (plaintiff's individual suit challenging parole procedures mooted by release absent "demonstrated probability" that he would again be subject to parole board's jurisdiction); *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1081 (5th Cir. 1991) (*per curiam*) (holding that prisoner transferred out of offending institution could not state a claim for injunctive relief). In order for plaintiff's claims to remain viable, he would have to establish that the possibility of returning to CSP would make his claims capable of repetition yet evading review. *See Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir.1975). Plaintiff must show either a "demonstrated probability" or a "reasonable expectation" that he would again be incarcerated at CSP. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). At its most lenient, the standard is not "mathematically precise" and requires that plaintiff show a "reasonable likelihood" of repetition. *Honig v. Doe*, 484 U.S. 305, 318-19 (1988).

Even under the most permissive interpretation, plaintiff's complaint does not, and cannot, meet that standard. Simply put, plaintiff has been released from the custody of CSP and his requests for injunctive relief are moot. *See Herman v. Holiday*, 238 F.3d 660 (5th Cir.2001) (even if plaintiff had established an Eighth Amendment violation, his transfer from the offending institution rendered his claims for declaratory and injunctive relief moot) (citing *Cooper v. Sheriff, Lubbock County, Tex.,* 929 F.2d 1078, 1084 (5th Cir. 1991); *Bailey v. Southerland*, 821 F.2d 277, 279 (5th Cir. 1987).

**Conclusion**

Therefore, **IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DENIED AND DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief can be granted in accordance with 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglas v. United Serv. Auto. Ass'n,* **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE this 6th day of October, 2011.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE